```
               UNITED STATES DISTRICT COURT
               EASTERN DIVISION OF KENTUCKY
                CENTRAL DIVISION at LEXINGTON
```

RICARDO K. GONZALES,           )
                               )
      Petitioner,              )
v.                             )         Civil Case No.
                               )         5:12-cv-142-JMH
COMMANDANT, UNITED STATES      )
DISCIPLINARY BARRCKS, FORT     )    **MEMORANDUM OPINION & ORDER**
LEAVENWORTH, KANSAS, et.       )
al.,                           )
                               )
      Respondents.             )

\*\*\*

This matter is before the Court on Ricardo Gonzales's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 [D.E. 1]. The United States has responded [D.E. 16], and the time has passed for Petitioner's reply. Thus, this matter is now ripe for review. For the reasons which follow, the petition will be denied.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

In August 2003, Petitioner, a former captain in the United States Army, was found guilty of several offenses including sodomy with a child under the age of sixteen, unlawful damage of military and non-military property, and making false official statements, among other charges. [D.E. 16-1 at 6–9]. He was originally sentenced to fifteen years of confinement and dismissal from the army. [D.E. 16-1 at 9]. Ultimately, the convening authority only

approved a sentence of eleven years and nine months with a sixty-one day confinement credit and dismissal from service. [D.E. 1-1 at 7].

On April 20, 2010, the Army Clemency and Parole Board ("ACPB") informed Petitioner that he would be placed on mandatory supervised release ("MSR") on his minimum release date. [D.E. 16-1 at 14, 26]. As conditions of his MSR, Petitioner was required to enroll in and successfully complete an appropriate child sex offender aftercare program. [D.E. 16-1 at 18—19]. Further, he was told that, if state law so required, he would have to register as a sex offender. [D.E. 16-1 at 19]. Petitioner was instructed to submit an acceptable supervision plan for his MSR, as required by Department of Defense Instruction 1325.7. [D.E. 16-1 at 13—24]; [D.E. 16-10, Instruction 1325.7, at 26 ("The prisoner shall be required to submit a parole plan and agree in writing to abide by that plan.")]. However, Petitioner's submitted plans to live with his wife or sister were denied because his wife was unwilling to accept him into her home, and his sister resided in a one-room studio apartment that inspectors determined was inappropriate living space for two adults. [D.E. 16-1 at 24—25].

2

After these MSR plans were rejected, Petitioner failed to provide acceptable plans at the ACPB's request. [D.E. 16-4 at 10—11]. Accordingly, Petitioner's case was forwarded to a Discipline and Adjustment Board ("DAB") in August 2010, where he was afforded the opportunity to submit evidence and arguments on his behalf. [D.E. 16-4 at 5—16]. The DAB found him guilty of violating a lawful order, and held that he forfeited ninety days of abatement credit as a result; however, Petitioner was informed that if he submitted a valid MSR plan, his credits would be restored. [D.E. 16-4 at 12]. When Petitioner again failed to submit a valid MSR plan, he was brought back before the DAB in November 2010. [D.E. 16-3 at 24—33]. This time, the DAB held that Petitioner forfeited all remaining abatement credits by failing to abide by lawful orders, but was again instructed that the credits would be restored if he submitted a valid plan. [D.E. 16-3 at 25].

Instead of submitting a valid MSR plan, Petitioner remained in confinement and submitted two extraordinary writ appeals to the U.S. Army Criminal Court of Appeals ("ACCA"). [D.E. 16-5 at 1—3]; [D.E. 16-8 at 18—28]; [D.E. 16-9 at 1—13]. The ACCA denied the petitions on June 29, 2010, and July 16, 2010, and, although he appealed both denials to the Court of Appeals for the Armed Forces, they

3

were denied. [D.E. 16-5 at 22—41]; [D.E. 16-8 at 24]. After exhausting his appeals, Petitioner filed a habeas petition in the United States District Court for District of Kansas on July 22, 2010, but he voluntarily withdrew it after the court ordered him to show cause why it should not be dismissed.[1]  [D.E. 16-5 at 10—15]; [D.E. 16 at 6].

Petitioner was transferred to the Federal Medical Center in Lexington, Kentucky, ("FMC Lexington") on September 13, 2011. [D.E. 16-3 at 20]. When transferred, Petitioner's minimum release date was August 28, 2013, and his maximum release date was March 20, 2015; however, due to newly earned abatement credits, his current minimum release date rests at May 27, 2013. [D.E. 16-3 at 18—19; 6]. Petitioner filed his second habeas petition in this Court on May 7, 2012. [D.E. 1].

**II. STANDARD OF REVIEW**

Habeas corpus relief may be granted under 28 U.S.C. § 2241 to a federal prisoner who demonstrates he "is in

---

[1] Petitioner's first petition sought substantially the same relief as he presently seeks. *Gonzales v. United States*, 5:10-cv-03153-RDR (D. Kan.), D.E. 1. The court ordered Petitioner to show cause why his petition should not be dismissed given the substantial similarity of his claims to those rejected by the court in *Huschak v. Gray*, 642 F. Supp. 2d 1268 (D. Kan. 2009). *Gonzales*, 5:10-cv-03153-RDR, at D.E. 9. On October 14, 2010, Petitioner chose to withdraw his petition, but reserved the right to re-file at a later date once he acquired legal counsel. *Gonzales*, 5:10-cv-03153-RDR, at D.E. 10.

4

custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "At this stage the Court accepts the petitioner's factual allegations as true and his legal claims are liberally construed in his favor." *Jessiah v. Holland*, No. 12-144-GFVT, 2013 WL 460624, at *1 n.1 (E.D. Ky. Feb. 6, 2013) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). "The court must deny the petition 'if it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief.'" *Wilkes v. Quintana*, 12-CV-228-JBC, 2013 WL 84931, at *1 (E.D. Ky. Jan. 7, 2013) (citing Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (applicable to § 2241 petitions pursuant to Rule 1(b))).

Further, in a military case, "[w]here there is no colorable jurisdictional question, a finding of full and fair consideration ends our habeas corpus inquiry." *Witham v. United States*, 355 F.3d 501, 505 (6th Cir. 2004) (citing *Burns v. Wilson*, 346 U.S. 137, 142 (1953)); *see also Lips v. Commandant, United States Disciplinary Barracks*, 997 F.2d 808, 811 (10th Cir. 1993) ("[I]f the military gave full and fair consideration to claims asserted in a federal habeas corpus petition, the petition should be denied.").

**III. ANALYSIS**

As an initial matter, Respondent has argued that the Commandant of the United States Disciplinary Barracks ("USDB") in Fort Leavenworth, Kansas, is not a proper respondent in this action. [D.E. 16 at 8]. The Court agrees. "The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242). Therefore, when a petitioner is in physical confinement, "the proper respondent is the warden of the facility where the prisoner is being held . . . ." *Id.* at 435. Because Petitioner is no longer imprisoned in Kansas, but, rather, is imprisoned at FMC Lexington, the Commandant USDB in Kansas no longer has custody over Petitioner; thus, it is not a proper respondent, and the petition against the Commandant USDB in Kansas is dismissed.

Moving on to the substance of Petitioner's claim, he argues that his placement in the MSR program and subjection to MSR conditions are unlawful violations of his due process rights because 1) he has already served his full sentence, and 2) his original sentence did not include supervised release nor required him to register as a sex

6

offender. [D.E. 1 at 3, 7]. Therefore, Petitioner argues that the ACPB's imposition of these punishments operates as an unlawful increase of his sentence. [D.E. 1 at 3].

First, however, Petitioner's assertion that he finished serving his full sentence on August 27, 2010, his former minimum release date, is flawed. Serving until one's minimum release date does not mean that one has served a full sentence, because the two dates are inherently different. Specifically, serving one's full sentence means that one has served the entirety of the sentence imposed by the sentencing authority, whereas the minimum release date is the adjusted date for a prisoner's release once deductions or forfeitures of good conduct time and other abatements have taken place. [D.E. 16-9, Army Regulation 633-30, at 31—33]; *see also Miller v. Air Force Clemency & Parole Bd.*, No. JFM-10-2621, 2011 WL 4402497, at *13 (D. Md. Sept. 20, 2011) ("A prisoner's Minimum Release Date (MinRD) is computed by changing the Adjusted Maximum Release Date to account or any sentence abatements or forfeitures.").

In this instance, there is no question that Petitioner has not served eleven years and nine months, which

7

represents his full sentence of confinement.[2] [D.E. 16-2 at 28]. Moreover, although August 27, 2010, was Petitioner's minimum release date at one time, Petitioner has since forfeited and earned abatement credits such that his minimum release date currently rests at May 27, 2013. [D.E. 16-3 at 6]. Thus, to the extent that Petitioner's argument is based on the premise that he has served his full sentence on August 27, 2010, it is fatally flawed.

Because Petitioner has not served his full sentence, his second argument, that the imposition of the MSR program and its conditions operate as an unlawful increase of his sentence in violation of his due process rights, also fails. To this Court's knowledge, the Sixth Circuit has not specifically considered the general validity of the MSR program, nor whether its imposition constitutes a sentence increase when one has not served their full sentence. However, other district courts from sister circuits that have recently addressed the issue have unilaterally agreed that MSR does not operate as a sentence increase so long as the MSR supervision period lasts no longer than the original, court-imposed sentence. *See Huschak v. Gray*, 642

---

[2] Petitioner was sentenced on August 21, 2003. [D.E. 1-1 at 7]. Thus, the eleven years and nine months, minus the sixty-one days of credit given by the sentencing authority, will not, at this Court's calculation, come to pass until March 20, 2015 (i.e. his maximum release date).

8

F. Supp. 2d 1268, 1276—81 (D. Kan. 2009); *Moultrie v. Sec'y of the Army*, 723 F. Supp. 2d 1230, 1237 (C.D. Cal. 2010); *Miller*, 2011 WL 4402497, at *12.

For example, in *Huschak*, the petitioner was sentenced to eight years of confinement, and, had he conformed to the conditions of MSR, would have served less than eight years. *Huschak*, 642 F. Supp. 2d at 1277. However, because he violated his MSR conditions, he forfeited good conduct time. *Id.* Regardless, the District of Kansas found that there was no "increase" in punishment because he would not serve more than the original eight years of confinement. *Id.* In *Moultrie*, the Central District of California similarly dismissed the petitioner's claims that his punishment was increased in violation of his due process rights by being placed on MSR because there was no evidence that his punishment had been increased beyond the 112-month total sentence. *Moultrie*, 723 F. Supp. 2d at 1237. Again in *Miller*, the District of Maryland found that placement on MSR, even when it is not mentioned in the original sentence, does not operate as a sentence increase because "conditional release from confinement, albeit with conditions, is not punishment." *Miller*, 2011 WL 4402497, at *12. The Court agrees with the analysis in the above cases, and, therefore, finds that the

9

MSR program does not operate as an administrative sentence increase in violation of Petitioner's due process rights since he will not be confined for longer than his full term of imprisonment.[3]

Petitioner's reliance on *Hill v. United States ex rel. Wampler*, 298 U.S. 460 (1936), and *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006), to support his claim that the MSR program and its conditions operate as an improper sentence increase are misplaced. First, Petitioner cites *Hill* for the proposition that the "only sentence known to the law is the sentence or judgment entered upon the records of the court." *Hill*, 298 U.S. at 464; [D.E. 1 at 4]. However, the Court agrees with Respondent's argument that this proposition is inapposite to Petitioner's case, since he is

---

[3] The Court recognizes that "due process requires some evidentiary basis for a decision to revoke good time credits. . . ." *Superintendent, Mass. Correctional Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985). As far as this Court can tell, Petitioner does not assert any deprivation in this regard. Regardless, the DAB afforded Petitioner due process prior to revoking his abatement credits. For example, prior to the DAB's revocation of his abatement credits, Petitioner received a hearing, was given the opportunity to present arguments on his behalf, and was informed that if he simply complied with their order to create a valid MSR plan, his credits would be restored. Moreover, Petitioner does not contest that he failed to follow the ACPB's and DAB's orders to create MSR plans, which provides the "some evidence" necessary to charge him with violating a lawful order. *Id*. at 454. The above certainly meets the less-stringent due process standard applicable in prison disciplinary proceedings. *Id*. at 455—56.

not seeking to enforce his original sentence, but, rather, suggests a nearly four-year downward departure from it.

Moreover, Petitioner relies on *Earley* for the proposition that a subsequent addition to a sentence that is not imposed by the sentencing judge is unlawful. *Earley*, 451 F.3d at 75; [D.E. 1 at 4]. However, in *Earley*, the defendant served four years of his six-year sentence and was *then* subjected to a five-year post-release supervision period as required under state law. *Id.* The Second Circuit held that because the original sentencing judge did not include a term of supervised release in the sentence, the administratively-added five year supervised release term was contrary to clearly established federal law since it increased his sentence by three years. *Id.* at 75—76. Thus, the *Earley* decision is incomparable to Petitioner's situation since there is no chance that the MSR program would have ever required Petitioner to be supervised for longer than his full sentence. *See Miller*, 2011 4402497, at *12 n.16 (finding that the *Hill* and *Earley* decisions were "inapposite" to the petitioner's case because "his placement on MSR with conditions did not add to his sentence.").

Although the Court concludes that the MSR program and its conditions do not increase Petitioner's sentence, it is

11

necessary to address one of Petitioner's collateral arguments. Specifically, Petitioner argues that the MSR condition that he complete a child sex offender rehabilitation program operates as a sentence increase since the sentencing authority did not mention the above punishment in its original sentence. However, pursuant to Department of Defense Instruction 1325.7, "[a] Clemency and Parole Board may establish and subsequently modify conditions of release as it considers reasonable and appropriate, such as the requirement to begin or continue treatment for alcohol or substance abuse." [D.E. 16-10 at 26]. Moreover, pursuant to any system of parole, prisoners are required to conform to "certain rules during the balance of the sentence." *Samson v. California*, 547 U.S. 843, 850 (2006). Thus, the ACPB had the authority to impose this requirement on Petitioner, particularly since he was to be released on MSR far before his full sentence terminated. Further, Petitioner also focuses on the requirement that he register as a sex offender once released. However, Respondent correctly points out that whether Petitioner is required to register as a sex offender depends upon the state law in the state in which he ultimately chooses to reside, and is completely independent of his MSR conditions. Regardless, the Sixth

12

Circuit has determined that sex offender registration requirements do not amount to custody, and, therefore, habeas relief from such requirements is inappropriate. *Leslie v. Randle*, 296 F.3d 518, 523 (6th Cir. 2002).

Finally, Petitioner seems to imply through his argument that the MSR program is not a system of parole.[4] However, parole has been defined by the Supreme Court as follows:

> The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence. Under some systems, parole is granted automatically after the service of a certain portion of a prison term. Under others, parole is granted by the discretionary action of a board, which evaluates an array of information about a prisoner and makes a prediction whether he is ready to reintegrate into society.
>
> Its purpose is to help individuals reintegrate into society as constructive individuals as soon as they are able, without being confined for the full term of the sentence imposed.

*Morrissey v. Brewer*, 408 U.S. 471, 477–78 (1972). When this definition is considered, it is clear that MSR fits within the framework of parole systems, as prisoners in MSR are "required to serve the balance of [their] sentence[s]

---

[4] Specifically, Petitioner argues that the "imposition of supervised release for prisoners who have not been granted parole, meaning prisoners who are being released because they have served their sentences, is an unlawful administrative extension of a prisoner's sentence." [D.E. 1 at 5–6].

13

outside of confinement on the condition that [they] abide by certain rules." *Huschak*, 642 F. Supp. 2d at 1276. "It does not matter whether the conditions [are] voluntary or involuntary," since, "[a]s the Supreme Court stated, under some parole systems release is automatic." *Id.; see also Moultrie*, 723 F. Supp. 2d at 1236 (holding that MSR is a system of parole); *Miller*, 2011 WL 4402497 (same). Further, statutory authority for the MSR program is provided in 10 U.S.C. § 952, which provides that "[t]he Secretary concerned may provide a system of parole for offenders who are confined in military correctional facilities and who were at the time of commission of their offenses subject to the authority of that Secretary." 10 U.S.C. § 952(a). Thus, there seems to be no question that MSR is a valid system of parole that the ACPB was statutorily authorized to impose.

Therefore, having carefully considered Petitioner's writ, **IT IS ORDERED** that Petitioner's Petition for Writ of Habeas Corpus [D.E. 1] is **DENIED.**

This the 4th day of April, 2013.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge

14